IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATY GULLETTE and FRED
GULLETTE,                                          No. 3:14-cv-00537-HZ
                          Plaintiffs,

                                                   OPINION & ORDER
          v.

THE LANCASTER & CHESTER CO.,
INC., a South Carolina Corporation; and
GULF & OHIO RAILWAYS, INC., a
Tennessee Corporation,

                          Defendants.


Molly Jo Mullen
Jamison R. McCune
Bodyfelt Mount LLP
707 S.W. Washington Street, Suite 1100
Portland, OR 97205-3528

          Attorneys for Plaintiffs


/ / /
/ / /


1 – OPINION & ORDER

Stephen F. English
Gabrielle D. Richards
Perkins Coie, LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiffs Katy Gullette and Fred Gullette bring this action against Defendants the

Lancaster & Chester Company, Inc. ("TLC") and Gulf & Ohio Railways, Inc. ("G&O").

Plaintiffs bring claims for breach of contract, breach of the covenant of good faith and fair

dealing, and unfair trade practices under South Carolina law.  Defendants move to dismiss for

lack of personal jurisdiction.  In the alternative, Defendants move to transfer this case to the

United States District Court for the District of South Carolina.  Because Plaintiffs fail to

demonstrate that Defendants have sufficient minimum contacts with Oregon such that the Court

may exercise specific jurisdiction over Defendants, I grant Defendants' motion to dismiss.

I deny the alternative motion to transfer as moot.

BACKGROUND

    Plaintiff Fred Gullette is a long-time Oregon resident.  F. Gullette Decl. [17] ¶ 2.

Plaintiff Katy Gullette is Mr. Gullette's daughter and business partner.  K. Gullette Decl. [16] ¶¶

4-5.  She is a Utah resident.  Id. at ¶ 3.  Defendant TLC is a South Carolina corporation, with its

shop located in Lancaster, South Carolina.  Gedney Aff. [10] ¶ 5.  Defendant G&O is a

Tennessee corporation, and TLC's parent company.  Claussen Aff. [9] ¶ 3 and ¶ 7.  Plaintiffs

entered into a contract with TLC for the renovation of their private railcar, the "Pacific Sunset."

Pls.' First Am. Compl. [1-1] ¶ 4.

Plaintiffs have a membership in the American Association of Private Railroad Car Owners (AAPRCO).  K. Gullette Decl. [16] ¶ 7; F. Gullette Decl. [17] ¶ 5.  Their AAPRCO membership provided a subscription to *Private Varnish*, id., a quarterly publication about privately owned railroad passenger cars.  M. Mullen Decl. [15], Ex. A.  *Private Varnish* is published four times per year but the fourth issue is published as the *Private Car Charter Guide*.[1]  AAPRCO prints and distributes both publications.  Id.  A copy of *Private Varnish* was delivered by mail to Mr. Gullette's residence in Portland, Oregon.  F. Gullette Decl. [17] ¶ 8.  Plaintiffs learned about TLC through its advertisement in *Private Varnish*.  K. Gullette Decl. [16] ¶ 7; F. Gullette Decl. [17] ¶ 5.

Plaintiffs contacted TLC to perform renovations on the Pacific Sunset.  K. Gullette Decl. [16] ¶¶ 12-14; F. Gullette Decl. [17] ¶¶ 10-11.  TLC faxed a contract to Plaintiffs.  K. Gullette Decl. [16] ¶ 13.  Plaintiffs received the contract at Mr. Gullette's residence in Portland, Oregon.  Id.  Plaintiffs executed the contract in Oregon on December 23, 2010.  F. Gullette Decl. [17] ¶ 11.  Plaintiffs first faxed a copy of the signed contract back to TLC and subsequently mailed the original to TLC in South Carolina.  Id. at ¶¶ 13-14.  TLC executed the contract in South Carolina, and received the original signed contract by Plaintiffs in South Carolina.  Gedney Aff. [10] ¶¶ 7-8.  The contract provides for the application of South Carolina law.  Id. at Ex. A, ¶ 9.

TLC received the Pacific Sunset in South Carolina, and all the renovation work was performed in South Carolina. Gedney Aff. [10] ¶ 10.  TLC's employees, and former employees, who worked on the railcar reside in or near South Carolina.  Claussen Aff. [9] ¶ 3 and ¶ 8.  Throughout the Pacific Sunset's renovation process, Ms. Gullette communicated with TLC's staff by phone and email.  K. Gullette Decl. [16] ¶ 19.  Both Plaintiffs visited TLC's facilities in

---

[1] The Private Car Charger Guide, http://www.aaprco.com/charter-request/print-guide.html.

3 – OPINION & ORDER

South Carolina on multiple occasions.  Gedney Suppl. Decl. [25] ¶ 8.  Once the renovations were

finished, the Pacific Sunset was delivered to Plaintiffs in South Carolina.  Gedney Aff. [10] ¶ 9.

STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal on

the grounds that the court lacks personal jurisdiction.  Plaintiff has the burden of showing

personal jurisdiction.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

> If the district court decides the motion without an evidentiary hearing, which is
> the case here, then the plaintiff need only make a prima facie showing of the
> jurisdictional facts.  Absent an evidentiary hearing this court only inquires into
> whether the plaintiff's pleadings and affidavits make a prima facie showing of
> personal jurisdiction.  Uncontroverted allegations in the plaintiff's complaint must
> be taken as true.  Conflicts between the parties over statements contained in
> affidavits must be resolved in the plaintiff's favor.

Id.  (citations, internal quotation marks, and brackets omitted).

In diversity cases, the court looks to the law of the state in which it sits to determine

whether it has personal jurisdiction over the non-resident defendant.  W. Helicopters, Inc. v.

Rogerson Aircraft Corp., 715 F. Supp. 1486, 1489 (D. Or. 1989); see also Boschetto, 539 F.3d at

1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of

the forum state.").

Oregon Rule of Civil Procedure (ORCP) 4 governs personal jurisdiction issues in

Oregon.  Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due

process, Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP

4L; Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale, 294 Or. 381, 657 P.2d 211 (1982)),

the court may proceed directly to the federal due process analysis.  See Harris Rutsky & Co. Ins.

Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long-arm statute

reaches as far as the Due Process Clause, the  court need only analyze whether the exercise of

jurisdiction complies with due process); see also Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

      To comport with due process, "the non-resident generally must have 'certain minimum contacts [with the forum state so that the exercise of jurisdiction] does not offend traditional notions of fair play and substantial justice.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). The forum state may exercise either general or specific jurisdiction over a non-resident defendant. Boschetto, 539 F.3d at 1016. In this case, Plaintiffs do not contend Oregon has general jurisdiction over Defendants. Therefore, I address only whether this Court has specific personal jurisdiction over Defendants.

DISCUSSION

      Defendants raise three arguments against the exercise of specific personal jurisdiction: (1) They have not purposefully availed themselves of any benefits, privileges, or protections conferred by the State of Oregon; (2) Plaintiffs' claim against Defendants does not arise out Defendants' activities conducted in Oregon; and (3) the exercise of jurisdiction over Defendants is not reasonable.

I. Specific Personal Jurisdiction

      The Ninth Circuit uses a three-part test to determine if a party has sufficient minimum contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation marks omitted).

The Supreme Court recently addressed the "minimum contacts" necessary to create specific jurisdiction. Walden, 134 S. Ct. at 1121. The Court explained that the "inquiry whether a forum state may assert specific jurisdiction over a non-resident defendant focuses on the relationship among the defendant, the forum, and the litigation." Id. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. The Court noted that two related aspects of this necessary relationship are relevant. Id. at 1121-1122. "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Id. at 1122 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "Second, [the] 'minimum contacts' analysis looks to the defendant's conduct with the forum State itself, not the defendant's contacts with the person who resides there." Id. (citing Int'l Shoe Co., 326 U.S. at 319).

Plaintiff bears the burden on the first two parts of the specific jurisdiction test. Boschetto, 539 F.3d at 1016. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." Id. If plaintiff fails at the first step, "the jurisdictional inquiry ends and the case must be dismissed." Id.

A. Purposeful Availment

To determine whether the purposeful availment requirement has been met the court considers whether (1) a non-resident purposefully availed itself of the privilege of conducting

activities in the forum, or (2) purposefully directed its activities toward the forum.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  The "purposeful

availment analysis is most often used in suits sounding in contract."  Id.  Whereas, the

"purposeful direction analysis, . . . is most often used in suits sounding in tort."  Id.  The dispute

between Plaintiffs and Defendants arises out of a contract[2].  Therefore, the purposeful availment

analysis is appropriate in this case.

> In Harris Rutsky, the Ninth Circuit explained that:
>
> [t]he purposeful availment prong of the minimum contacts test requires a
> qualitative evaluation of the defendant's contact with the forum state in order to
> determine whether [the defendant's] conduct and connection with the forum
> [s]tate are such that [the defendant] should reasonably anticipate being haled into
> court there.  The purposeful availment requirement is met if the defendant
> performed some type of affirmative conduct which allows or promotes the
> transaction of business within the forum state.  Physical contact with the forum
> state is not a necessary condition[.]

328 F.3d at 1130 (internal quotation marks, citations, and brackets omitted).

The "[p]urposeful availment analysis examines whether the defendant's contacts with the

forum are attributable to his own actions or are solely the actions of the plaintiff."  Sinatra v.

Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).  "In order to have purposefully availed

oneself of conducting activities in the forum, the defendant must have performed some type of

affirmative conduct which allows or promotes the transaction or business with the forum state."

Id.; see also Walden, 134 S. Ct. at 1122 (noting that the relationship with the forum must arise

out of contacts that the "defendant *himself*" creates with the forum.) (quoting Burger King, 471

U.S. at 475).

---

[2]  Plaintiffs' First Amended Complaint asserts that Defendants knowingly and willfully engaged in unfair or
deceptive acts in the conduct of trade or commerce in violation of the South Carolina Unfair Trade Practices Act.
Pls.' First Am. Compl. [1-1] ¶¶ 24-35.  Even though the unfair trade practices claims are akin to tort claims, in their
briefs, both parties address specific personal jurisdiction as a matter arising out of contract-related activities; neither
party argues the purposeful direction test.  Therefore, I address only the purposeful availment test.
However, even if Plaintiffs asserted specific jurisdiction over Defendants arising under a tort claim, there is no
evidence to support that Defendants purposefully directed their activities toward Oregon.

Plaintiffs argue Defendants purposefully availed themselves of the privileges of conducting business with Oregon by advertising in *Private Varnish* and by executing a contract with a forum resident.  In three 2010 issues of *Private Varnish* and two issues of the *Private Car Charter Guide*, TLC had full-page advertisements for its services.  The advertisements encourage the readers to visit TLC's website, and list TLC's contact information and e-mail address.  The publications also feature articles written by a TLC representative.  Pls.' Suppl. Decl. in Supp. of Pls. Opp'n Ex. A – F.

Plaintiffs rely on <u>Sinatra</u> for the proposition that an advertisement is solicitation of business in the forum and is considered purposeful availment.  However, advertising in *Private Varnish* is not sufficient to support a finding of personal jurisdiction.  <u>Holland Am. Line Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 460 (9th Cir. 2004).  A print advertisement that may incidentally make its way to the forum, without more, is insufficient evidence of contacts with the forum.  <u>Id.</u> (noting forum resident offered no evidence that the non-resident's advertisements were designed specifically for the forum state's market or that the advertisements were heavily distributed in the forum state).  Here, Plaintiffs fail to show that Defendants' advertisements were designed specifically for the Oregon market or that such advertisements were heavily distributed in Oregon.  In fact, the information provided by Plaintiffs shows that TLC's advertisement in *Private Varnish* incidentally made its way to Oregon.  *Private Varnish* is a trade magazine distributed to a limited audience of 2,000 subscribers throughout the United States, Canada, Europe, and Australia.  M. Mullen Decl. [15-2], Ex. B. The advertisements and information in the publications do not change the facts that *Private Varnish* and the *Private Car Charter Guide* are trade magazines with limited distribution, not heavily distributed in Oregon, and that the articles published therein were not designed specifically for the Oregon market.

Further, mere web presence with a passive website is insufficient to establish personal jurisdiction. Holland Am. Line, 485 F.3d at 460. TLC's online presence is insufficient to support a finding of personal jurisdiction. Thus, the website is not sufficient to find that Defendants affirmatively directed their conduct toward Oregon. Finally, Plaintiffs initiated the relationship between the parties by responding to the advertisements in *Private Varnish*. Thus, the contractual relationship between the parties resulted from Plaintiffs' unilateral activity. This is not sufficient to subject a non-resident to jurisdiction in the forum. See Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991).

Next, Plaintiffs rely on McGee v. International Life Ins. Co. to argue that a contract executed in the forum is sufficient to establish personal jurisdiction. In McGee, the Supreme Court held "[i]t is sufficient for purposes of due process that [a] suit was based on a contract . . ." which was delivered and executed in the forum. 355 U.S. 220, 223 (1957). Plaintiffs argue that just like in McGee, the contract here was delivered and executed in the forum. Defendants, however, note that (1) the law requires more than just the execution of a contract in the forum, and (2) McGee is distinguishable factually. As to the law, in Burger King, the Supreme Court indicated that while a non-resident party's contract with a forum resident is relevant to the jurisdictional analysis, such contract alone does not automatically constitute purposeful availment. 471 U.S. at 478; see also Roth, 942 F.2d at 621 (noting that in the contract context, the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the non-resident defendant). Instead, to determine whether purposeful availment exists, the court looks to whether the contract creates ongoing obligations with, or continuing commitments in, the forum. See Boschetto, 539 F.3d at 1017. The inquiry requires

consideration of the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.  Burger King, 471 U.S. at 479.

Plaintiffs allege that an ongoing contractual relationship was created between the parties because Plaintiffs acquired a financial responsibility for paying the for Pacific Sunset's renovations.  Plaintiffs also suggest that Defendants owed them a continuing obligation because TLC possessed the Pacific Sunset for over a year while the renovations took place.  Id.  However, McGee addressed the long-term continuing relationship created by an insurance policy contract between the insured and the insurance company.  See 355 U.S. at 223-224.  Given the heavy state regulation of insurance policies to protect consumers, some courts have suggested that the outcome in that case has been limited to matters regarding insurance.  E.g. World Wide Travel, Inc. v. Travelmate US, Inc., No. 2013-133-JEB, 2013 WL 6047559, at *5 (D.C. Cir. Nov. 15, 2013) (noting and explaining that McGee has been limited to matters regarding the insurance field; concluding the outcome in McGee was justified in part because the relationship between the forum and the contract was more substantial than an online advertising contract and because of the special status of insurance in state law).  The nature of the insurance contract in McGee is distinguishable from the contract at issue here because the contract in McGee involved an insurance policy, which contemplated a continuing relationship between the insurance company and the insured.  Here, the contract for renovation services, which does not establish or contemplate a continuing relationship beyond the renovation services, anticipated completion of the renovations within a year.  See Gedney Aff. [10], Ex A.

In addition, Plaintiffs fail to address the Ninth Circuit's holding in Roth.  Roth held that when a forum resident seeks out parties in other states and deals with them by interstate mail or telephone, the forum resident is not entitled to force the non-resident party to come to the forum

to defend an action on a contract.  942 F.2d at 621-622.  The Ninth Circuit concluded that ordinary use of the mail, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protections of the forum state.  Id. at 622 (citing Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985)).  Here, the parties' use of mail or telephone during negotiations is not sufficient conduct to qualify as purposeful availment. Plaintiffs fail to show that Defendants have purposefully availed themselves of the privilege of conducting activities in Oregon, thereby invoking the benefits and protections of Oregon laws. Thus, I find Plaintiffs have not established the first prong of the specific jurisdiction test.

I also note that Plaintiffs offered no evidence to support the Court's exercise of personal jurisdiction over G&O.  As previously mentioned, G&O is TLC's parent company.  However, G&O was not a party to the renovations contract and it has never had a contractual relationship with Plaintiffs.  See Gedney Aff [10], Ex. A.  In this case, no evidence was presented to support a finding that this Court may exercise personal jurisdiction over G&O.

B.  Forum-Related Activities

In determining whether a claim arises out of a non-resident's forum-related activities, the Ninth Circuit follows a "but-for" test.  Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). The relevant question is whether but for Defendants' contacts with Oregon, would the claims against Defendants have arisen?  See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (posing question).  Plaintiffs allege their claim would not have arisen but for Defendants' contacts in Oregon, namely TLC's marketing efforts toward Oregon and TLC's contract with an Oregon resident.  Defendants argue that Plaintiffs' claims do not relate to, or arise from, any past or future breach conducted in Oregon.  They argue that the alleged breach of contract arose out of activities conducted solely in South Carolina.  I resolve this prong in favor of Defendants.  For

the reasons previously explained there is no evidence to support a finding that the contract

between the parties resulted from Defendants' activities in Oregon.

     C.  Reasonableness

     To avoid jurisdiction, the non-resident party bears the burden of showing that

exercise of jurisdiction is unreasonable.  See Boschetto, 539 F.3d at 1016.  To determine

whether the exercise of jurisdiction is reasonable, the court balances the following

factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's
> affairs; (2) the burden on the defendant of defending in the forum; (3) the extent
> of conflict with the sovereignty of the defendants' state; (4) the forum state's
> interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
> controversy; (6) the importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence of an alternative forum.

Harris Rutsky, 328 F.3d at 1132 (internal quotation marks omitted).

     No one factor is dispositive.  Id.  Instead, the court must balance all seven.  Id.  Here,

Defendants argue that even if Plaintiffs had established the first two prongs of the specific

jurisdiction tests, the Court's exercise of jurisdiction is not reasonable.

     1.  Purposeful Interjection

     Plaintiffs cite Roth for the proposition that an analysis of the purposeful interjection

factor is redundant.  However, examining purposeful interjection is redundant only when the

court has concluded that a non-resident has purposefully availed himself of the privilege of

conducting activities in the forum.  Roth, 942 F.2d at 623.  Defendants allege that purposeful

interjection into Oregon's affairs is virtually non-existent.  In support of this argument,

Defendants point to the lack of evidence to support purposeful availment.  Because Plaintiffs fail

to establish that Defendants' presence in Oregon resulted from their own conduct, I conclude

there was no purposeful availment and consequently no purposeful interjection by Defendants into Oregon's affairs.

      2.  Burden on Defendants

Plaintiffs rely on <u>McGee</u> for the proposition that the nationalization of commerce by way of modern transportation and communication has made it much less burdensome for a party to defend itself in a foreign state where it has engaged in economic activity. 355 U.S. at 222-223. Plaintiffs are correct, but they fail to acknowledge that subsequent Supreme Court cases have supplemented the specific personal jurisdiction test established by <u>McGee</u>. <u>E.g.</u>, <u>Burger King</u>, 471 U.S. at 476 (recognizing that modern commercial life has obviated the need for defendant's physical presence in the forum so long as the commercial actor's efforts are purposefully directed toward the residents of another state); <u>Hanson v. Denckla</u>, 357 U.S. 235, 250-251 (1958) (noting technological progress has increased the flow of commerce between states and explaining that no matter how minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the minimal contacts with the state, which are a prerequisite to its exercise of power over him). While it is true that modern communication and transportation would ease Defendants' burden of litigating in Oregon, Plaintiffs fail to show that Defendants either purposefully directed activities toward Oregon or that Defendants have the minimal contacts with Oregon so as to permit the Court's exercise of jurisdiction over Defendants.

Moreover, Plaintiffs overlook the limitations on the Court's subpoena power. Under the Federal Rules of Civil Procedure, the Court may command a person to attend trial, hearing, or deposition only within the state or 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1). In this case, most, if not all, of

Defendants' employees and officers reside in or around South Carolina. Claussen Aff. [9] ¶ 3 and ¶ 8.  There is no evidence showing that any one of Defendants' employees or officers have had any contacts with Oregon.  Furthermore, Defendants point out the financial burdens they would incur by potentially having to send thirteen of their employees to Oregon to attend trial. After balancing the parties' burdens, I find it would be far more burdensome for Defendants to litigate in Oregon than for Plaintiffs to litigate in South Carolina.  Therefore, this factor favors Defendants.

### 3.  Sovereignty of Defendants' State

Next, the court must determine the extent to which the exercise of jurisdiction would conflict with South Carolina.  This prong is neutral because neither party raises issues related to this factor.

### 4.  Oregon's Interest in Advocating the Dispute

Oregon has a substantial interest in adjudicating disputes involving Oregon residents. See Exp. Global Metals, Inc. v. Memking Recycling Group, LLC, No. 3:13–CV–000747–HU, 2013 WL 5781212, at *6 (D. Or. Sep. 26, 2013).  Therefore, this factor favors Plaintiffs.

### 5.  Most Efficient Judicial Resolution

Next, Plaintiffs cite Panavision International, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998), for the proposition that the most efficient judicial resolution factor is not given heavy consideration.  Although Plaintiffs are correct, Panavision found this factor to be neutral because that case dealt with a limited amount of evidence and few potential witnesses.  Id. at 1323-1324. That is not the case here.  As previously discussed, Defendants have identified at least thirteen potential witnesses.  Taking into consideration that the amount of evidence here is not limited

and the number of potential witnesses already identified, I find the scale weighs slightly in

Defendants' favor.

> 6.  Importance of the Forum to Plaintiffs' Interest in Convenient and Effective Relief

Plaintiffs further argue the most convenient and effective means to seek relief is Oregon.

They point to Mr. Gullette's old age and his close ties to Oregon.  They allege that compelling

him to travel across the country to seek relief would be inconvenient and burdensome.  In

response, Defendants point to the various visits Plaintiffs made to their South Carolina shop

while the renovation on the Pacific Sunset took place.  Taking into consideration the allegations

by both parties, I find this factor weighs in favor of Defendants.

> 7.  Alternative Forum

Finally, Plaintiffs cite Sinatra for the proposition that the existence of another reasonable

forum is an issue only when the forum state is shown to be unreasonable.  854 F.2d at 1201.

Plaintiffs allege Defendants have failed to present a compelling case that South Carolina is a

reasonable forum.  Plaintiffs bear the burden of proving the unavailability of an alternative

forum.  Roth, 942 F.2d at 624-625 (citing Sinatra, 854 F.2d at 1201).  Even if a plaintiff argues

that his state is a more convenient forum, to overcome his burden, the plaintiff has to show he

would be precluded from suing the defendant in another forum.  Id.  Here, Plaintiffs have not

shown they would be precluded from suing Defendants outside Oregon.  They have not met their

burden of proving the unavailability of an alternative forum.  Thus, this factor also weighs in

Defendants' favor.

Of the seven factors, the majority favors Defendants.  Therefore, even if Plaintiffs had

made a prima facie showing on the first two elements of the specific jurisdiction analysis,

Defendants have presented a compelling case that this Court's exercise of jurisdiction would not be reasonable.  Thus, I dismiss the action against Defendants for lack of personal jurisdiction.

II.  Alternative Motion to Transfer Venue

Because the facts of this case do not support a finding that this Court may exercise specific jurisdiction over Defendants, I do not need to reach a decision on the venue transfer matter.  I deny Defendants' alternative motion to transfer venue as moot.

CONCLUSION

Based on the foregoing, Defendant's motion to dismiss [7] is granted.  Defendant's alternative motion to transfer venue is denied as moot.

IT IS SO ORDERED.

Dated this _____ day of July, 2014.

MARCO A. HERNÁNDEZ
United States District Judge